**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**J. M.,**
**Claimant Below, Petitioner**

**vs.)     No. 20-0302** (BOR Appeal No. 2055001)
               (Claim No. 2020006044)

**ALTICE TECHNICAL SERVICE USA, INC.,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner J. M., by counsel William B. Gerwig III, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review").[1] Altice Technical Service USA, Inc. ("Altice Technical Service"), by counsel Steven K. Wellman, filed a timely response.

The issue on appeal is compensability of the claim. The claims administrator rejected the claim on October 3, 2019. On January 3, 2020, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's decision. This appeal arises from the Board of Review's Order dated May 21, 2020, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]

. . . .

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record. . . .

*See Hammons v. West Virginia Off. of Ins. Comm'r*, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office of Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. West Virginia Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

J. M. worked for Altice Technical Service as a maintenance technician. On May 17, 2019, he alleges that he injured his right hip/groin while lifting seventy-pound batteries out of his assigned bucket truck. On the following Tuesday, May 21, 2019, he informed his employer, by text message, that he had injured his groin the previous Friday, "before work." He went on to state that when the pulled groin occurred that previous Friday, it "ached a little," and he figured he would "deal with it" after the upcoming "bz weekend" when he would be "playing." He stated that he woke up on Tuesday, May 21, 2019, to find that he could barely walk and that he was in need of medical care.

J. M. was seen at Urgent Care of Cross Lanes on May 22, 2019. The Office Clinic Note records the history of the reported illness being:

"Patient complaining of 5 days of pain in his right inguinal area. No known injury. . . Patient works as a lineman. States this happened as he was climbing in and out of his truck at home."

A physical examination revealed tenderness at the right inguinal groin area. He was diagnosed with a thigh sprain. There was no mention of a work-related injury. J. M. returned to Urgent Care of Cross Lanes on May 29, 2019.[2] He had pain over his anterior groin area and lateral hip. The symptoms increased upon weightbearing. An x-ray revealed congenital dysplasia involving the right acetabulum. Under "History of Present Illness," it was noted that J. M. experienced right

---

[2] J. M.'s employment was terminated at the end of May 2019.

2

inguinal pain for five days, with "no known injury." The pain was said to have occurred while "climbing in and out of his truck at home."

On June 11, 2019, J. M. was treated by Samantha Seitz, N.P., with the Charleston Family Practice Group, for right hip pain that radiated to his right leg. Ms. Seitz noted no precipitating event or injury. Physical examination revealed right hip pain with range of motion. An MRI of the hip was recommended. Although physical therapy was recommended, J. M. disagreed that it was necessary for his condition. He also did not feel that he had time for physical therapy. An MRI performed at Women and Children's Hospital on June 20, 2019, revealed dysplastic changes of the right hip and equivocal mild dysplastic changes of the left hip.[3] Associated changes of the redundant patulous right labrum were also found. An MRI of J. M.'s lumbar spine taken that same date revealed disc protrusions at the L3-4 and L4-5 levels. A very mild narrowing spinal canal was found at the L4-5 level.

J.M. signed a WC-1 application form on August 6, 2019, nearly three months after his alleged injury. He claimed that the injury was to his right hip and low back on May 17, 2019, and that it was a work-related injury. In describing the incident, J. M. wrote that he was injured while "lifting power supply batteries over 70 lbs. Pivoted to move." He indicated that he was in the employer's "bucket truck" and that he was on call. The physician's section was signed by Michael Chancey, M.D., with CAMC Urgent Care, Inc., who stated that J. M. had an occupational injury of a right thigh sprain. Upon examination, J. M.'s right hip was tender. He was prescribed cyclobenzaprine for pain.

Dr. Chancey referred J. M. for consultation with Clark Adkins, M.D., an orthopedist, who examined him on August 15, 2019. Dr. Adkins noted, "He was cleaning his truck and felt a pop in his hip. Since then he had pain in his groin. He had pain in his hip. Pain does not radiate down the anterior aspect of the leg to the mid-thigh. He has pain at rest also." A physical examination revealed positive impingement and Stinchfield tests. However, right hip range of motion was normal. Dr. Adkins reviewed J. M.'s x-rays, which he wrote showed "a very shallow up with acetabular dysplasia. The joint space itself is maintained." Dr. Adkins diagnosed right hip osteoarthritis resulting from hip dysplasia.

J. M. gave a recorded statement on September 3, 2019. He reported that he was not working at the present time and insisted that he stopped working because he "couldn't even walk anymore . . . because my groin area and everything else was damaged." He described his job duties as a floater who maintained a portion of the employer's power grid. J. M. explained that he had been called to duty on the date of injury because "there was a major storm moving through . . . there was already outages everywhere." In response to that call, J.M. stated, "I had to start prepping my truck and getting stuff out of my truck." The injury occurred "while I was inside the bucket truck

---

[3] "Hip dysplasia is the medical term for a hip socket that doesn't fully cover the ball portion of the upper thighbone. This allows the hip joint to become partially or completely dislocated. Most people with hip dysplasia are born with the condition." *See* www.mayoclinic.org/diseases-conditions/hip-dysplasia/symptoms-causes/syc-200350209.

unloading the batteries and moving stuff around to get ready." He indicated that he "pivoted wrong" while removing batteries from the company truck while preparing for storm duty.

By Order dated October 3, 2019, the claims administrator denied compensability of the claim. J. M. protested the claims administrator's rejection of the claim. At a hearing on December 4, 2019, J. M. testified that his job included hanging new lines, diagnosing line problems, and taking care of on-call outages during storms. He testified that he is uncertain of the time he was injured at work, but he is certain that the injury occurred approximately one hour after beginning preparation of the employer's bucket truck. J. M. stated that he had to finish prepping the truck before he could begin repairing lines damaged by the storm.

By decision dated January 3, 2020, the Office of Judges affirmed the Order of October 3, 2019, denying compensability of the claim. In analyzing J. M.'s protest, the Office of Judges noted that his application contains too many inconsistencies to sustain the application. The first problem found was that he sent a text message on May 21, 2019, to Mr. Hypes wherein he does not mention a work-injury; instead, he states that he was playing over the weekend. Second, the Office of Judges stated that J. M.'s treatment note from Urgent Care of Cross Lanes does not point to an apparent precipitating event or injury. It was also found that J. M.'s MRIs do not support an injury consistent with his testimony. Another troubling aspect of the application found by the Office of Judges is that J. M. did not claim a work injury until after his employment was terminated, and after he was denied treatment by Dr. Adkins's office on July 15, 2019. Because his descriptions of his immediate symptoms after the alleged injury are inconsistent, the Office of Judges determined that J. M. did not prove by a preponderance of the evidence that he sustained an injury in the course of and as a result of employment on May 17, 2019. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on May 21, 2020.

After review, we agree with the reasoning and conclusions of law of the Office of Judges, as affirmed by the Board of Review. The evidence of record shows that J. M. has been diagnosed with right hip osteoarthritis resulting from hip dysplasia, which is a congenital condition, not related to any injury. Although he argues that he suffered a work-related injury on May 17, 2019, his various descriptions of his condition included several inconsistencies which do not warrant a finding that a compensable injury occurred.

Affirmed.

**ISSUED: July 19, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton